UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD ANTHONY BURROS,

    Petitioner,

v.

                                        Case No. 1:05-cv-701
                                        Hon. Robert J. Jonker

CINDI S. CURTIN,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    **I.**    **Background**

    This case arises from the robbery of the Chicken Coop restaurant in Grand Rapids on March 8, 2001. A jury convicted petitioner of one count of armed robbery, M.C.L. § 750.529, and one count of unarmed robbery, M.C.L. § 750.530. *People v. Leonard Anthony Burros*, No. 244287 (Mich. App. April 27, 2004). He was sentenced as a fourth habitual offender, M.C.L. § 769.12, to concurrent prison terms of ten to thirty years for the armed robbery, and ten to twenty years for the unarmed robbery. *Id.*

    Petitioner presented three issues in his direct appeal to the Michigan Court of Appeals:

    I.    Was [petitioner] denied his right to the effective assistance of counsel and thus his right to a fair trial when his counsel had an endorsed "investigator" who in fact was not an investigator testify for [petitioner] to the petitioner's detriment; and when his counsel failed to object to improper rebuttal?

> II. Did the trial court abuse its discretion when it denied [petitioner's] motion for a new trial or judgment of acquittal when the verdict was against the great weight of the evidence and the physical testimony evidence proved incredible and defied physical reality?
>
> III. Was [petitioner] denied his constitutional right to a jury drawn from a venire representative of a fair cross-section of the community when the system in place systematically excluded minorities and as a result under representation of African-Americans, of which [petitioner] is a member?

*See* Brief on Appeal (docket no. 22). The Michigan Court of Appeals affirmed the conviction. *People v. Leonard Anthony Burris*, No. 244287.

Petitioner raised the same three issues in his application for leave to appeal to the Michigan Supreme Court, along with the following new issue:

> [Petitioner] was denied his right to the effective assistance of appellate counsel. [Petitioner] was not informed about anything, or visited concerning his appeal and appellate counsel submitted a brief to the Appeals Court without [petitioner's] knowledge.

*See* docket no. 23. The Michigan Supreme Court denied petitioner's application. *People v. Leonard Anthony Burris*, No. 126320 (Mich. Nov. 22, 2004).

Now, petitioner has raised three grounds for habeas relief:

I. The petitioner was denied his right to the effective assistance of counsel and thus his right to a fair trial when his counsel had an endorsed "investigator" who in fact was not an investigator, testify for the petitioner to his detriment; and when counsel failed to object to improper rebuttal.

II. The trial court abused its discretion when it denied the petitioner's motion for a new trial or judgment of acquittal when the verdict was against the great weight of the evidence and the physical and testimonial evidence proved incredible and defied physical reality.

III. The petitioner was denied his constitutional right to a jury drawn from a venire representative of a fair cross-section of the community

2

>   when the system in place systematically excluded minorities and African-Americans, of which the petitioner is a member.

Petition (docket no. 1).

## II.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

>   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Petitioner's habeas claims

### A. Ineffective assistance of counsel (Issue I)

#### 1. Defense counsel hired an inexperienced investigator

Petitioner contends that his counsel was constitutionally ineffective because counsel hired an unlicensed and inexperienced "investigator" who lacked credentials. The Michigan Court of Appeals addressed petitioner's argument and summarized the investigator's trial testimony as follows:

> Defendant first contends that his trial attorney was ineffective because he called a witness whose credibility was impeached by the prosecution . . . Effective assistance of counsel is presumed and the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v. LeBlanc*, 465 Mich. 575, 578; 640 NW2d 246 (2002). In order to establish ineffective assistance of counsel, the attorney's performance must have been

4

> "objectively unreasonable in light of prevailing professional norms" and "but for the attorney's error or errors, a different outcome reasonably would have resulted." *People v. Harmon*, 248 Mich. App 522, 531; 640 NW2d 314 (2001), *citing People v. Carbin*, 463 Mich. 590, 599-600; 623 NW2d 884 (2001).
>
> In the instant case, defense counsel's decision to have an unlicensed and inexperienced investigator testify does not mandate a new trial. Defense counsel only hired the witness to take photographs and to make measurements at the restaurant. Although the prosecution emphasized on cross-examination that the witness was not a licensed investigator, the witness had already admitted he was not licensed and had no special training. Further, the witness testified concerning measurements that required no particular expertise to make. Defendant has failed to show how the witness' lack of credentials as an investigator altered the effect of his testimony concerning whether or not defendant could have fit through the security bars. We must conclude that defendant has failed to demonstrate that a different outcome would likely have resulted if the witness had not testified.

*People v. Leonard Anthony Burris*, No. 244287, slip op. at 1-2 (footnote omitted).

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington.* 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.

5

Whether to call a particular witness is one of a lawyer's strategic decisions. *See United States v. Medved*, 905 F.2d 935, 942 (6th Cir. 1990) (counsel's decision not to call defendant's probation officer as a witness was a matter of trial strategy); *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993) (concluding that "counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment"). A trial counsel's strategic and tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must overcome a presumption that the challenged action might be considered sound trial strategy. *Bell v. Cone*, 535 U.S. 685, 698 (2002).

At the hearing on the motion for a new trial, defense counsel testified that his firm retained the investigator to take photographs, take measurements and serve subpoenas. Motion Trans. (9/22/03) at 11-12. The investigator gave the following testimony at trial. His occupations included tribologist (i.e., a person who designs engineering filtration systems), a criminal investigator and a process server. Trial Trans. (3/27/02) at 365. However, he had not taken any special law enforcement classes and was not a licensed private investigator. *Id.* In this case, he took photographs and measurements at the crime scene and measured petitioner's dimensions. *Id.* at 365-72. These measurements indicated to the jury that petitioner could not fit through the security bars at the Chicken Coop. *Id.* at 365-72, 411-13. On cross-examination, the investigator re-affirmed that he had no special qualifications or training in criminal investigation. *Id.* at 372-74.

The record reflects that the investigator played a limited role in the criminal investigation, i.e., he took photographs and measurements. Petitioner has failed to overcome the presumption that defense counsel's limited use of the investigator was sound trial strategy. The

tasks assigned to the investigator did not involve any particular skill sets. Indeed, one could argue that a person with an engineering and design background would have superior qualifications in taking measurements. Furthermore, given the investigator's limited involvement, petitioner has failed to show prejudice by his lack of a private investigator's license.

### 2.     Defense counsel's failure to object to a rebuttal witness

Next, petitioner contends that his counsel failed to object to a rebuttal witness, Detective Griffin. The Michigan Court of Appeals addressed this issue as follows:

> Defendant's claim that his attorney failed to object to an improper rebuttal witness must also fail. After defendant presented testimony of a restaurant employee concerning a video tape from the restaurant's security camera, the prosecution called a detective who testified that no such tape existed. Defendant argues that his trial counsel should have objected to this last statement because the detective testified to something about which he had no personal knowledge. Although he did not object on the grounds that the detective testified to matters beyond his personal knowledge, defendant's counsel thoroughly cross-examined the detective on this point. The decision to attempt to impeach the witness rather than object to his testimony constituted a matter of trial strategy. *People v. Rockey*, 237 Mich. App 74, 76-77; 601 NW2d 887 (1999). Further, we are satisfied that this rebuttal testimony did not affect the outcome of the trial.

*People v. Leonard Anthony Burris*, No. 244287, slip op. at 1-2.

Petitioner's contention is without merit. On rebuttal, Detective Griffin testified that he did not receive a videotape of the armed robbery and that no videotape was available from the premises. Trial Trans. (3/27/02) at 383-84. Defense counsel extensively cross-examined the detective to demonstrate his limited knowledge regarding the existence of the videotape. *Id.* at 385-91. Counsel's method of cross-examination is a matter of trial strategy. *See Lockett v. Arn*, 740 F.2d 407, 412 (6th Cir. 1984). Petitioner has failed to overcome the presumption that defense counsel's attempt to impeach Detective Griffin was sound trial strategy.

7

### 3.     Summary

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief for this claim.

### B.     Petitioner's "great weight of the evidence" challenge (Issue II)

Next, petitioner contends that the trial court abused its discretion in denying his motion for a new trial or judgment of acquittal because the jury verdict was against the great weight of the evidence.  Petitioner's contention, however, does not raise a federal issue cognizable on habeas review.  Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  A state prisoner's claim that the jury verdict was against the great weight of the evidence is considered to be a state law claim not cognizable on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) (federal courts have "no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence"); *Crenshaw v. Renico*, 261 F.Supp.2d 826, 834 (E.D. Mich.2003).  Accordingly, petitioner's great weight of the evidence claim should be denied.

### C. Petitioner's challenge to the jury (Issue III)

Finally, petitioner contends that he was denied his constitutional right to a jury drawn from a venire representative of a fair cross-section of the community. The Michigan Court of Appeals rejected this claim as follows:

> Lastly, defendant argues that he was denied the right to a jury drawn from a venire representing a fair cross section of the community. The Sixth Amendment entitles a criminal defendant to an "impartial jury drawn from a fair cross section of the community." *People v. Hubbard ( After Remand )*, 217 Mich. App 459, 472; 552 NW2d 493 (1996). The petit jury does not have to mirror the community, but distinct groups cannot be systematically excluded from the venire.
>
> Despite the existence of this right, we find that defendant in the instant case is precluded from raising the issue on appeal. Challenges to the composition of a jury must be asserted in a timely manner. *People v. McCrea*, 303 Mich. 213, 278; 6 NW2d 489 (1942). In a case dealing with the same alleged errors in the Kent County jury selection process as the instant case, this Court stated that in order to properly preserve a challenge to the jury array, a party must raise the issue before the jury is empanelled and sworn. *People v. McKinney*, 258 Mich.App 157, 160-161; 670 NW2d 254 (2003). The *McKinney* Court held that because the defendant failed to object to the composition of the jury array, she forfeited appellate consideration of the issue. *Id.* Defendant's appeal in the instant case must similarly fail because he did not object to the composition of the jury array until he filed his first motion for a new trial five months after the trial court impaneled the jury.
>
> Defendant argues that he could not have challenged the composition of the jury array earlier, because the error in the selection process did not come to light until after his trial. At the time of the trial, Kent County officials maintained that the jury selection system was functioning properly even though it was not. However, this was the case in *McKinney* as well, and the Court, nevertheless, found that the issue was not properly preserved. [FN2]
>
>> [FN2.] Defendant's reliance on *Amadeo v. Zant*, 486 U.S. 214; 108 S Ct 1771; 100 L.Ed.2d 249 (1988), is misplaced. *Amadeo* concerned the cause and prejudice standard for federal habeas corpus review. Further, *Amadeo* is factually distinct from the instant case. Unlike in *Amadeo*, no evidence has been presented to show that the basis for defendant's claim was not reasonably available to his attorney, or that Kent County officials intentionally interfered to keep the underrepresentation from coming to light.

9

*People v. Leonard Anthony Burris*, No. 244287, slip op. at 3-4.

The Sixth Amendment guarantees a criminal defendant an impartial jury drawn from a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 358-59 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975). The petit jury does not have to mirror the community, but distinct groups cannot be systematically excluded from the venire. *See, United States v. Jackman,* 46 F.3d 1240, 1244 (2nd Cir. 1995). Notwithstanding this right, which Michigan courts recognize in its entirety, the rule in Michigan has for some time been that a defendant can be precluded from raising the issue on appeal if he does not timely raise it at trial. *See People v. McCrea,* 303 Mich. 213, 278 (1942). In *People v. Carter*, 462 Mich. 206 (2000), the Michigan Supreme Court stated that a defendant cannot waive an objection to an issue at trial and then make a claim of error on appeal. In that instance, the court found that because the defendant's counsel had expressed satisfaction with the trial court's jury instructions, the defendant had waived the issue. *Id.*

To establish a *prima facie* violation of the fair cross-section requirement, petitioner bore the burden of proving "that a distinctive group was under-represented in his venire or jury pool, and that the under-representation was the result of systematic exclusion of the group from the jury selection process." *People v. Smith,* 463 Mich. 199 (2000), citing *Duren v. Missouri, supra*. Petitioner apparently relies on newspaper articles to support his claim that African-Americans were systematically excluded from Kent County's jury pools, due to a "computer glitch" which occurred from the Spring of 2001 through the Summer of 2002. Petition at pp. 28-35; Appx. D. In petitioner's case, jury selection occurred on March 21, 2002. Voir Dire Trans. (3/21/02). This would have been within the period during which the computer error purportedly occurred in the Kent County Jury Management System. Petitioner, however, did not challenge the jury array at trial. If

10

he felt the jury venire was unbalanced, he did not say so.  At the close of jury voir dire, petitioner's counsel stated that "the defense is satisfied."  *Id.* at 53.  The jury was then empaneled and sworn. There were no objections regarding the composition of the jury array at any time during the trial, much less the voir dire, and trial counsel's statement constitutes an express waiver of the issue.  Both petitioner and respondent have represented to the courts that petitioner's jury included one African-American.  Appellate Brief at 34 (docket no. 33); Respondent's Answer at 13.[1]

The Michigan Court of Appeals determined that petitioner waived his challenge to the venire and jury selection process because his trial counsel did not raise the issue before the jury was empaneled and sworn.  *People v. Leonard Anthony Burros*, No. 244287, slip op. at 3-4.  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain,* 522 U.S. 87, 89 (1997).  It will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Monzo v. Edwards,* 281 F.3d 568, 576 (6th Cir. 2002).

To determine whether a petitioner procedurally defaulted a federal claim in state court, this court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an

---

[1] Because petitioner did not preserve the issue, this court cannot discern the race of the individual members of the jury array from the trial record.

"independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). To be timely under Michigan law, a challenge to the jury array must be made before the jury has been impaneled and sworn. It is clear that this rule was well-established at the time of Petitioner's trial. *See People v. McCrea*, *supra* at 276-79; *People v. Hubbard*, 217 Mich. App. 459, 465-66 (1996) ("A challenge to the jury array is timely if it is made before the jury has been impaneled and sworn. . . . An expression of satisfaction with a jury made at the close of voir dire examination waives a party's ability to challenge the composition of the jury thereafter impaneled and sworn."); *People v. Stephen*, 31 Mich. App. 604, 606 (1971).

It is too late to raise the issue for the first time on appeal. *Id*. A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 385 (2002). The trial court cannot address issues not brought to its attention. By contrast, see *Jackman*, *supra*, where the issue was raised prior to jury selection and a hearing on the issue held prior to the jury being sworn. *Jackman*, 46 F.3d at 1243. Contemporaneous objections allow the court to address the problem while something can be done to correct it. Failing to address perceived problems when they can be corrected is simply an attempt to get a second bite at the apple. A person would not watch his home being built on a cement block foundation, only to demand upon completion of the house that poured concrete be used

12

instead. A defendant should not be afforded the opportunity to sit quietly and obtain a verdict under one set of rules when he knows there may be a problem, only to demand a new trial with different rules if he is found guilty. If there is a problem during trial, it is incumbent upon the party, if he is aware of that problem or would be with due diligence, not to blind side the court, but to bring it to the court's attention. *Id.* at 1248 (". . . in the absence of a timely objection to the jury selection process, courts will retain the discretion to uphold convictions.").

Petitioner failed to meet his burden of proof with regard to systematic exclusion of jurors, and his belated attempt to offer inadmissible hearsay evidence in the form of newspaper articles does not change that fact.[2] Petitioner's failure to raise the issue in the trial court also left the appellate courts in this case with a record devoid of any competent evidence to consider in support of his allegations. Consequently, the appellate courts had no means of conducting a meaningful review of petitioner's allegations on appeal. *See McKinney,* 258 Mich. App. at 161-2. Petitioner's failure to comply with the state's independent and adequate state procedural rule, i.e., making an objection to the jury array before the jury has been impaneled and sworn, caused petitioner to default his claim in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*,

---

[2]Michigan appellate courts may not take judicial notice of newspaper articles as they constitute inadmissible hearsay. *See, Baker v. General Motors Corp.,* 420 Mich. 463 (1984).

547 U.S. 518, 536-37 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 537. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner has made no such claim or showing of actual innocence in this case.

To show cause sufficient to excuse a failure to raise claims on direct appeal, petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488; *McCleskey v. Zant*, 499 U.S. 467, 497 (1991). For cause, petitioner appears to state that the error was not procedurally defaulted because he could not have known the legal basis for his challenge to the jury venire earlier, since the purported computer glitch had not been discovered.

As a defendant, however, petitioner did not need to know of the computer glitch to raise the issue of a defective defense. Simply seeing an array when the deficiency is apparent provides adequate notice. Petitioner and his counsel were placed on notice of the basis of his claim as soon as they viewed the jury array.

In *Hubbard, supra* at 498, the court emphasized the significance of viewing the array. The court in that case held that the defendant was not required to challenge the juror allocation process "<u>before</u> defendant actually viewed the array." (Emphasis added.) Once the defendant viewed the array he raised his objection. The difference between *Hubbard* and the present case is

14

that the defendant in *Hubbard* made his challenge after viewing the array and *prior* to the jury being sworn, and Petitioner did not.

Similarly, in *People v. Oliphant,* 399 Mich. 472, 501 (1976), the defendant waited until after the jury selection and until the first day of trial to challenge the jury array, alleging that it deprived him of his right to an impartial jury drawn from a fair cross section of the community because of the absence of persons between the ages of 18 and 21. The Michigan Supreme Court held the challenge to be untimely because the claim was based "on the fact that no persons between the ages of 18 and 21 *appeared on the array*." (Emphasis added.)

By contrast, in *People v. Bryant,* ___ Mich. App. ___, 2004 WL 513644 (3/16/04), a defendant was convicted in Kent County during the same period as plaintiff in this case but *did* make a timely objection during the voir dire process that he had been deprived of his Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community. As a result of his timely objection, he was determined to have preserved his claim and was afforded an evidentiary hearing by the Michigan Court of Appeals.

Thus, the law in Michigan is unequivocal that you are considered on notice once you have viewed the array and you must raise a timely objection before the jury is empaneled and sworn.

In support of his position, petitioner relies on *Amadeo v. Zant,* 486 U.S. 214 (1988). This case is inapposite. This was a death penalty case in which the district attorney and the jury commissioners in Putnam County, Georgia, <u>intentionally</u> engineered a scheme to cause African-Americans to be under-represented in the county's juries. The scheme <u>included a cover-up to mask the impropriety by keeping the percentage of black jurors within statistical guidelines</u> mentioned in

prevailing case law. *See, Amadeo v. Kemp,* 816 F.2d 1502, 1508 (11th Cir., 1987) (dissent).[3]  In other words, the discrepancy was not obvious at the venire.  The Supreme Court held that the district court's factual finding that the defendant's lawyers had not deliberately bypassed the jury challenge, because the deceit of the prosecutor and the jury commissioners had been intentionally hidden, was not clearly erroneous.  *Amadeo*, 486 U.S. at 225.

While this argument has found some traction with two other habeas cases arising out of Kent County during this period and currently pending in the Eastern District of Michigan,[4] the argument fails to distinguish between having notice of a defect in the jury venire, and knowing the underlying reason for the discrepancy.

The Michigan Court of Appeals has addressed petitioner's argument that the reason for the purported discrepancy in the venire panel could not have been known to some defendants at the time of their trials, but has been careful to make the distinction between (1) the opportunity defendants had to notice the fact of a discrepancy and raise the issue, and (2) not knowing the reason why it occurred.  In *People v. Barnes,* No. 244590, 2004 WL 1121901 at *3 (Mich. App. Jan. 15, 2004) (unpublished), the court observed:

> We recognize that perhaps the alleged unconstitutional jury selection *process* could not have been specifically identified at the time of trial. *But, in light of the all-white jury, it was incumbent on defendant to make a timely challenge or raise an objection. A concern on defendant's part about the racial makeup of the venire should have arisen, and a timely challenge may very well have led to discovery of possible problems in the selection process. . . . [B]ecause one of the elements is under-representation in a specific defendant's jury array or venire, defendant, when faced*

---

[3] *Amadeo v. Kemp* was the court of appeals decision in the *Amadeo v. Zant* case.

[4] *Parks v. Warren,* 574 F. Supp.2d 737, 744-47(E.D. Mich. 2008); *Powell v. Howes,* 2007 WL 1266398, at *4-5 (E.D. Mich. May 1, 2007).  These cases are not binding authority on this Court, and I do not find their analysis of *Amadeo*, 486 U.S. 214, to be persuasive for the reasons stated above.

>  *with an all-white jury, could have, minimally, raised an objection below.* [Emphasis added.]

In the *Amadeo* case, unlike the present case and the situation in *Barnes,* simply viewing the array would not have alerted Amadeo to the discrepancy, since the representation of blacks on the venire was approximately 50%.[5] *Amadeo v. Kemp,* 816 F.2d 1503, 1506. This was because "the discriminatory scheme was designed to make detection by defendants nearly impossible. The jury pool <u>appeared</u> to be fairly integrated." (emphasis added) *Id.* at 1509, 1511. Since Amadeo had no meaningful opportunity to object at voir dire, the Supreme Court, in this capital case, focused on whether he should have discovered, by the time of the voir dire, the "smoking gun" (or incriminating memo) which had been concealed by county officials. *Amadeo v. Zant, supra* at 223-4. Thus, *Amadeo v. Zant* provides no guidance in the present case,[6] nor are the Michigan cases contrary to the *Amadeo* holding.

Here, both petitioner and his counsel were satisfied with the racial composition of the jury, which they agree included one African American juror. If petitioner had observed that the array did not a fair cross-section of the community, it is, of course, not necessary to know the reason why in order to object. Rather, it is by raising the question that a court has the opportunity to inquire and determine if there has been a constitutional violation. For the federal courts to ignore the established state requirement of a timely objection is not only an affront to the state courts, but it gives a petitioner (and presumably countless other unhappy defendants convicted in Kent County

---

[5] The actual jury in the *Amadeo* case contained an even number of blacks and whites as well. *Id.*

[6] There is no allegation of active concealment in this case by the Kent County officials. Even Petitioner contends only that a computer glitch in the Kent County Jury Management System caused the exclusion of minorities in the jury pool. (Mem. in Supp. of Pet. at 34-35.)

during this same period) a second bite at the apple, because of the possibility of a constitutional violation that could have been investigated at the time and was not.[7]

Petitioner has failed to demonstrate cause for his procedural default. As a result, this claim is procedurally barred on habeas review, as it must be.

Recently, the Sixth Circuit decided the case of *Smith v. Berghuis,* 543 F.3d 326 (2008), which held that a trial court in Kent County violated a defendant's Sixth Amendment right to a jury drawn from a fair cross-section of the community. I mention the case only to distinguish it. In *Smith,* the Sixth Circuit held that the petitioner's Sixth Amendment right to a trial by a jury drawn from a fair cross-section of the community was violated when the underrepresentation of African Americans in the venire panel occurred as a result of systematic exclusion due to circumstances entirely unrelated to the present case. Smith was tried in 1993, when Kent County assigned jurors to district court panels prior to assigning them to circuit court panels. *Id.* at 331-32. Kent County also excused jury duty absences for several social and economic reasons such as lack of transportation, child care or inability to take time off from work. *Id.* at 332, 340. Smith, an African American, argued that both of those practices resulted in the underrepresentation of African Americans on the venire panels. *Id.* at 339. The practice at issue in *Smith* ended in 1993. Petitioner's trial occurred almost ten years later, in 2002, and involved a completely different problem: a computer glitch in the Kent County Jury Management System that purportedly affected

---

[7]While it may not be determinative of this issue, the possibility of going back and redetermining the actual racial makeup of the jurors summoned during this period is probably not feasible. For example, the Kent County Circuit Court summoned 17,578 jurors in 2002, nearly 17% of which did not appear. 2002 Annual Report of the 17th Judicial Circuit Court at 18-19. This court is not aware of any attempt by the circuit court at that time to systematically collect or maintain the race of each juror summoned, whether they appeared or not. At best, the court would probably be left with statistical conjecture. This simply reinforces the importance of the state rule on timely objections.

the number of minorities in the jury pool by overlooking certain zip codes. *See* Mem. in Supp. of Pet. at App. D.

In stark contrast to the present case, Smith properly objected to the composition of the jury venire panel and petit jury prior to the jury being sworn. *Id.* at 330. After denying Smith's request, the trial court found that "there's nothing to indicate to me that . . . the manner of selecting jurors is anything other than impartial and that there's been any type of subjective selection of jurors to create a problem in terms of representation." *Id.* Because the issue was properly preserved, the habeas court did not need to address whether Smith had procedurally defaulted his claim. The Sixth Circuit, therefore, was able to address the merits of Smith's claim. Here, Petitioner never objected to the composition of the jury venire panel, and never gave the trial court an opportunity to address the issue while it was still feasible to do so.

### IV.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  February 27, 2009                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).